IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| PATRICIA GEERS, Individually and as Representative of the Estate of KEIFER PATRICK GEERS (Deceased) | § § § § § | |
| v. | § § | Civil Action No. 7:24-CV-34 |
| UNLIMITED IMAGINATION, LLC d/b/a THE KRATOM KING | § § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, PATRICIA GEERS, Individually and as Representative of the Estate of KEIFER PATRICK GEERS (Deceased), brings this lawsuit against Defendant, UNLIMITED IMAGINATION, LLC d/b/a THE KRATOM KING ("Kratom King"), and would respectfully show the following:

**I.
PARTIES**

1.      Plaintiff, Patricia Geers, is a resident of Ector County, Texas and may be served through her attorney of record Jason A. Gibson, The Gibson Law Firm, 3701 Kirby Drive Suite 101, Houston, TX 77098, efile@jag-lawfirm.com.

2.      Defendant, Unlimited Imagination, LLC d/b/a The Kratom King ("Kratom King"), is a limited liability company organized and existing under the laws of the State of Nevada. Defendant may be served through its registered agent, Matthew Taylor, at 701 S Carson Street, Suite 200, Carson City, Nevada 89701.

## II.
## WRONGFUL DEATH AND SURVIVAL CLAIMS

3. Plaintiff, Patricia Geers, Individually and as Representative of the Estate of Keifer Geers (Deceased), is entitled to bring this action under the Texas Wrongful Death Act. TEX. CIV. PRAC. & REM. CODE ANN. §71.002. Specifically, Plaintiff, Patricia Geers, is the surviving biological mother of Keifer Geers (Deceased).

4. In addition, Plaintiff, Patricia Geers, brings this action on behalf of the Estate of Keifer Geers (Deceased) under the Texas Survival Statute as Representative of the Estate. TEX. CIV. PRAC. & REM. CODE ANN. §71.021. Specifically, Patricia Geers is the lawful Representative of the Estate of Keifer Geers (Deceased).

5. The estate of the deceased does not have two or more debts. All of the estate's debts have been paid. Furthermore, Patricia Geers is the sole surviving heir to the Estate of Keifer Geers (Deceased).

## III.
## JURISDICTION

6. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because this dispute arises between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. The Court has specific personal jurisdiction over Kratom King because Kratom King had purposeful contacts with the State of Texas and Plaintiffs' injuries arose from said contacts. Specifically, Kratom King sold Kratom to Keifer Geers (Deceased) in Texas, shipped Kratom to Keifer Geers in Texas, marketed and sold a defective product in Texas, made misrepresentations about a defective product sold in Texas and had continuous contacts with Texas.

## IV.
## VENUE

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Specifically, the death of Keifer Geers occurred in Midland County, Texas.[1]

## V.
## FACTS

9. On April 14, 2022, thirty-three (33) year old Keifer Geers ("Geers") died from mytraginine toxicity, in Midland County, Texas. Mitragynine is the active ingredient in kratom.[2] Kratom is an herbal substance with opioid properties indigenous to Southeast Asia. Kratom is sold in the U.S. as a dietary "supplement" by various retailers, including online retailer Defendant, Kratom King.

10. From 2010 until just 10 days before his death, Geers purchased kratom from Kratom King's online store on a monthly basis.[3] Kratom King shipped "Kratom King" branded kratom products to Geers at his Midland, Texas home and advertised and marketed Kratom to Geers via email and direct messages.[4]

---

[1] *See* Exhibit 1: Keifer Geers' Death Certificate.

[2] *See* Exhibit 1: Keifer Geers' Death Certificate.

[3] *See* Exhibit 2: Kratom King March 7, 2022 Purchase and Shipping Confirmation and Exhibit 3: Kratom King April 4, 2022 Purchase and Shipping Confirmation .

[4] *See* Exhibit 2: Kratom King March 7, 2022 Purchase and Shipping Confirmation and Exhibit 3: Kratom King April 4, 2022 Purchase and Shipping Confirmation; *see also* Exhibit 7: Kratom King Chewable Tablet Marketing Material and

11.     Geers paid for Kratom King kratom products via Zelle payments and wire transfers from his bank account in Austin, Texas to Unlimited Imagination, LLC and direct to Corinna Grassi, the owner and manager of Kratom King.[5]

12.     Geers was born deaf.  Despite facing adversity associated with his disability, Geers excelled both academically and socially.  Geers graduated top of his high school class and later attended Texas A&M University, earning a bachelors degree in Biomedical Engineering.  Geers planned to use his degree to design bio-medical technology to assist disabled children and wounded veterans.

13.     Geers also suffered from a painful bowel disorder and began taking kratom after it was advertized to him for pain relief. On the day of his death, Geers arrived at Midland International Airport with his mother on his way to visit old college friends.  As Geers walked towards security, Patricia Geers noticed his face suddenly turned blue.

14.     Geers then stumbled backwards and collapsed on the floor. Airport technicians attempted to resuscitate him via CPR with no success.  Geers was then transported to Midland Memorial Hospital.

15.     Shortly after arriving at the hospital, Geers died.  An autopsy revealed Geers's cause of death was toxic levels of mitragynine in his blood at the time of death. Mitragynine is the active ingredient found in kratom.

---

[5] *See* Exhibit 2: Kratom King March 7, 2022 Purchase and Shipping Confirmation and Exhibit 3: Kratom King April 4, 2022 Purchase and Shipping Confirmation; *see also* Exhibit 4: March 2022 Bank Statements and Exhibit 5: April 2022 Bank Statements and Exhibit 6: Nevada Secretary of State Unlimited Imagination Officer Information.

A. **RISK OF ADDICTION, ILLNESS AND DEATH FROM KRATOM**

16. The Center for Disease Control ("CDC"), New England Journal of Medicine and numerous other health organizations and medical journals all warn about the toxic effects of kratom and health risks, including death.[6]

17. The Mayo Clinic warns any alleged benefits from kratom are substantially outweighed by the side effects and risks addiction, illness and death:[7]

> Researchers who have studied kratom think its side effects and safety problems more than offset any potential benefits. Poison control centers in the United States received about 1,800 reports involving use of kratom from 2011 through 2017, including reports of death. About half of these exposures resulted in serious negative outcomes such as seizures and high blood pressure. Five of the seven infants who were reported to have been exposed to Kratom went through withdrawal.
>
> Kratom has a number of known side effects, including:
>
> - Weight loss;
> - Dry mouth;
> - Chills, nausea and vomiting;
> - Changes in urine and constipation;
> - Liver damage; and
> - Muscle pain.
>
> Kratom also affects the mind and nervous system:
>
> - Dizziness;
> - Drowsiness;
> - Hallucinations and delusion;
> - Depression and delusion;
> - Breathing suppression; and
> - Seizure, coma and death.

---

[6] https://www.fda.gov/news-events/press-announcements/fda-announces-seizure-adulterated-dietary-supplements-containing-kratom (last accessed July 23, 2021).

[7] https://www.mayoclinic.org/healthy-lifestyle/consumer-health/in-depth/kratom/art-20402171 (last accessed July 23, 2021).

B.   **KRATOM KING SOLD AND MARKETED KRATOM ILLEGALLY**

18.   There are no Food and Drug Administration ("FDA") approved uses for kratom and it is illegal to sell and market kratom as a drug or dietary supplement in the United States.[8] In 2012, the FDA banned import of kratom as an unapproved drug as it is <u>not fit for human consumption</u>. Sellers, like Kratom King, who illegally market kratom are subject to seizure and injunctions:[9]

> The FDA continues to warn consumers not to use Mitragyna speciosa, commonly known as kratom, a plant that grows naturally in Thailand, Malaysia, Indonesia and Papua New Guinea. Kratom is not legally marketed in the United States as a drug or dietary supplement, and while it is important to gather more evidence, data suggest that certain substances in kratom have opioid properties that expose users to the risks of addiction, abuse and dependence. There are no FDA-approved uses for kratom, and the agency has received concerning reports about the safety of kratom...
>
> Despite our warnings, companies continue to sell this dangerous product and make deceptive medical claims that are not backed by science or any reliable scientific evidence," said Acting FDA Commissioner Ned Sharpless, M.D. "As we work to combat the opioid crisis, we cannot allow unscrupulous vendors to take advantage of consumers by selling products with unsubstantiated claims that they can treat opioid addiction or alleviate other medical conditions.

19.   Kratom King did not warn Geers about the risk of addiction, illness or death, nor did Kratom King disclose kratom is considered an adulterated substance by the FDA and is not safe for human consumption. Instead, Kratom King routinely sent Geers advertisements of kratom products marketed for human consumption:

---

[8] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-July 23, 2021.); *see also* DEA Drug Fact Sheet – Kratom (https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf) (last accessed July 23, 2021).

[9] *Id.*

Kratom King Marketing "Chewable" Products Sent to Geers[10]



Kratom King Marketing "Drinkable" Products Sent to Geers[11]



---

[10] *See* Exhibit: Kratom King Chewable Tablet Marketing Material.

[11] *See* Exhibit: Kratom King "Kratomade" Market Material.

20. More troubling, and in addition to selling "chewable" and "drinkable" products, Kratom King encourages dangerous levels of human consumption of kratom, directly contradicting the FDA, by providing a "measurement conversion" table on its website.

Measurement Conversion Table From Kratom King's Website[12]

**Measurement Conversion Table**

Because everyone does not have access to a scale to measure their kratom.

Keep in mind that these are rough averages of level teaspoons and tablespoons. Shipments do vary, so it is best of verify your particular order if you are looking for exact information.

**Generic Amounts**
1 gram = 0.035 ounces
50 grams = 1.75 ounces
100 grams = 3.5 ounces

**Kratom Powder (Bali, Maeng Da, Thai)**
1 Tablespoon = 7.5 grams
1 Teaspoon = 2.5 grams

**Kratom Leaf (Bali, Maeng Da, Thai)**
1 Tablespoon = 1.25 grams
1 Teaspoon = 0.42 grams

Kratom extracts are highly variable and more potent, so we suggest you purchase a small digital scale to determine your needs. There are many options available, but we suggest a scale like this one available on Amazon. Kitchen scales are typically not accurate enough.

21. Kratom King also used its social media pages to promote kratom products as safe, beneficial, and intended to treat pain, anxiety and other health problems:

---

[12] *See* Exhibit: Kratom King Website "Dose" Table.

Kratom King's Tweet Touting Kratom's Health Benefits[13]



22. Kratom King even sent Geers an email boasting a regulatory failure in Nevada claiming, Nevada Board of Pharmacy cannot "bring kratom back for scheduling" and offered Geers a ten (10) percent discount to "celebrate the win" <u>a week</u> before Geer's death:

---

[13] *See* Exhibit: Kratom King Tweet Regarding Kratom Health Benefits.

Kratom King's Email Regarding "Win" Over Nevada Board of Pharmacy[14]



23. The FDA describes advertisements and endorsements like the ones provided by Kratom King as scams:

> Health fraud scams like these can pose serious health risks. These products have not been demonstrated to be safe or effective for any use and may keep some patients from seeking appropriate, FDA-approved therapies. Selling these unapproved products with claims that they can treat opioid addiction and withdrawal and other serious medical conditions is a violation of the Federal Food, Drug, and Cosmetic Act.

C. **KRATM KING FAILED TO WARN GEERS**

24. Kratom King made no effort to warn Geers of the toxic and deadly risks associated with kratom consumption. The packaging for Red Vein Thai kratom, which is often advertised as one of the *most potent* kratom products in the industry, contains no warnings

---

[14] *See* Exhibit: Kratom King Email Regarding Nevada Board of Pharmacy.

regarding addiction, overdose or death. The packaging fails to warn of any health risks whatsoever.

25. It fails to identify the amount of active ingredient in each dose, what doses are toxic or lethal and what the effects are of mitragynine toxicity. Lastly, the packaging fails to mention kratom is *not approved for human consumption*, an FDA requirement for kratom's importation to the United States.

Packaging for Red Vein Thai Kratom[15]




---

[15] *See* Exhibit: Kratom Packaging.

## VI.
## NEGLIGENCE

26. Kratom King had a duty to provide Geers, a foreseeable user, a safe product free of inherent dangers. Kratom King breached its duties and was negligent in one or more of the following ways:

   a. Failing to warn of risks of kratom;

   b. Failing to disclose known defects associated with kratom products sold by defendant;

   c. Failing to reasonably inspect kratom products before sale;

   d. Knowingly selling an unreasonably dangerous product to customers;

   e. Failing to provide adequate instructions for use of kratom;

   f. Marketing an unsafe product as safe;

   g. Marketing and advertising an adulterated substance for consumption by humans;

   h. Encouraging the use of a toxic substance for human consumption; and

   i. Providing false and misleading information regarding effects of kratom.

27. Kratom King's acts and omissions proximately caused Geer's death.

## VII.
## NEGLIGENT MISREPRESENTATION

28. Kratom King made representations to Geers in the course of its business and supplied false information for the guidance of Geers. Kratom King supplied false or misleading information for the specific purpose of guiding Geers in his purchase of kratom products. Kratom King's acts and omissions proximately caused Geer's death.

## VIII.
## BREACH OF IMPLIED WARRANTY

29. Pursuant to TEX. BUS. & COM. CODE ANN. §2.314, an implied warranty existed between Kratom King and Geers regarding the kratom products sold to Geers. Geers had a reasonable expectation, as would an ordinary consumer, that the product would not be defective, nor cause death.

30. Kratom King, as a seller, was a merchant with respect to the products sold. Kratom King had reason to know the products it sold would be used for human consumption and knew Geers would rely on Kratom King to furnish safe and suitable products.

31. Kratom King breached this warranty by failing to sell a safe product free of defects and safe for human consumption. Geer's death was proximately caused by Kratom King's defective product and subsequent breach of warranty.

## IX.
## PRODUCT DEFECTS

32. Kratom King, designed, manufactured and marketed Kratom King branded Red Vein Thai Kratom to Geers. This product was defectively designed, manufactured and marketed by Kratom King. The defect or defects made this product unreasonably dangerous for its intended use.

33. Amongst other defects, Kratom King Red Vein Thai kratom is unsafe for human consumption; contains an adulterated substance banned for human consumption by the FDA; increases the risk of illness and death; is addictive; is fatal in toxic quantities; lacked adequate warnings; lacked adequate instructions for use; contained fatal concentrations of mitragynine; and is not safe to treat any health conditions.

34. Additionally, such defect or defects existed at the time Defendant manufactured and sold the product in question. Such defect or defects were the proximate cause of Plaintiff's injuries and damages. Therefore, Defendant is liable to Plaintiff under strict products liability.

## X.
## WRONGFUL DEATH DAMAGES

35. Plaintiff requests the following damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff, Patricia Geers:

   a. Plaintiff's pecuniary loss from the death of Keifer Geers, including loss of care, maintenance, support, services, advice, counsel and contributions of pecuniary value that Plaintiff would, in all reasonable probability, have received from Keifer Geers during Plaintiff's lifetime;

   b. The mental anguish, grief and sorrow Plaintiff suffered in the past and will continue to suffer in the future as a result of Keifer Geer's death;

   c. Plaintiff's loss of society and damage to the mother-son relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness; and

   d. Plaintiff's loss of monetary support due to the death of Keifer Geers which Plaintiff would, in all reasonable probability, have received during Keifer Geer's lifetime.

## XI.
## SURVIVAL DAMAGES TO THE ESTATE OF KEIFER GEERS

36. Plaintiff respectfully request the following damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate the Estate of Keifer Geers (Deceased):

   a. The physical and conscious pain and suffering Keifer Geers suffered prior to his death as a result of his injuries caused by Defendant;

  b.  The mental anguish Keifer Geers suffered prior to his death as a result of the injuries sustained;

  c.  The amount of reasonable medical expenses necessarily incurred as result of Defendant's negligence;

  d.  The pysical incapacity and impairment suffered by Keifer Geers until his death;

  e.  The funeral and burial expenses incurred as a result of Keifer Geer's death; and

  f.  The reasonable amount of past wages from the date of Keifer Geer's death to present and the loss of future income reasonably expected during Keifer Geer's lifetime.

## XII.
## EXEMPLARY DAMAGES

37. Kratom King's conduct, when viewed from the standpoint of the actors at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Furthermore, Kratom King's conduct illustrates not only an attitude of conscious indifference for the rights, safety and welfare of others, but also shows Kratom King's actual and subjective awareness of the dangers of such conduct.

38. Nevertheless, Kratom King proceeded with a conscious indifference for the rights, safety or welfare of others, including Plaintiffs. Therefore, Kratom King is liable for punitive damages. Plaintiffs seek maximum exemplary damages allowed by TEX. CIV. PRAC. & REM. CODE § 41.008 and asserts, no exemplary damages cap applies because Kratom King's actions an omissions constituted and knowing or intentional felony injury to a disabled person pursuant to Texas Penal Code § 22.04(a):

    (a)    A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

        (1) serious bodily injury;

        (2) serious mental deficiency, impairment, or injury;  or

        (3) bodily injury.

## XIII.
## JURY DEMAND

39. Plaintiffs DEMAND A TRIAL BY JURY and tender the appropriate fee.

## XIV.
## PRAYER

40. For the above reasons, Plaintiffs pray for judgment against Kratom King, with interest on the judgment at the legal rate, pre-judgment interest, costs of court and for such other further relief, both in law and equity, to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

THE GIBSON LAW FIRM

_____
Casey L. Gibson
State Bar No. 24090599
Fed. Bar No. 2608907
cgibson@jag-lawfirm.com
3701 Kirby Drive, Suite 101
Houston, Texas 77098
Ph: (713) 650-1010
Fax: (713) 650-1011

**e-Service: efile@jag-lawfirm.com**
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify a true and correct copy of this document has been served on all counsel of record via e-service and/or e-mail in compliance with FRCP 5(b)(2) and local rules on February 1, 2024.

_____
Casey L. Gibson