## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

PATRICIA GEERS,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF KEIFER GEERS;
    *Plaintiff,*

v.

UNLIMITED IMAGINATION,
LLC,
    *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§

MO:24-CV-00034-DC

## <u>ORDER</u>

Kiefer Geers ("Decedent") was a long-time user of products containing the herbal extract mitragynine, commonly known as "kratom." Although kratom is not approved for any medical use by the Food and Drug Administration, some people use it to manage pain because of its opioid-like effect. Decedent was one of those people.

From 2010 to March 2022, Decedent regularly purchased his kratom-based products from Defendant Unlimited Imagination, LLC, an online retailer located in Nevada. Decedent's last purchase from Defendant was several bags of kratom powder branded as Red Vein Thai Kratom ("Product"). This was Decedent's last purchase because one week after the Product was delivered to Decedent's home in Odessa, Texas, Decedent lost his life.

On April 14, 2022, Decedent was at the Midland International Airport with his mother when he suddenly collapsed. On-site attempts to resuscitate him failed. And soon after arriving at Midland Memorial Hospital, Decedent was pronounced deceased. Decedent's autopsy later identified "Mitragynine Toxicity" as the underlying cause that initiated the events resulting in his death.

Decedent's mother, Plaintiff Patricia Geers, sued Defendant in February 2024, advancing claims for negligence, negligent misrepresentation, breach of an implied warranty, and product defects.[1] Defendant now moves to dismiss Plaintiff's claims under three theories. First, Defendant argues that, because it is a Nevada company, this Court lacks personal jurisdiction over it under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Next, Defendant claims this Court is an improper venue under Rule 12(b)(3). Lastly, Defendant contends Plaintiff has failed to state a plausible claim for relief under Rule 12(b)(6).

## LEGAL STANDARD

### I.      Lack of personal jurisdiction under Rule 12(b)(2).

Rule 12(b)(2) permits a court to dismiss claims against a defendant who is not subject to the court's personal jurisdiction. Under 28 U.S.C. § 1332(a), a federal court may exercise jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction conforms with the due process guarantees of the United States Constitution.[2] Because the Texas long-arm statute extends jurisdiction "as far as the federal constitutional requirements of due process will permit," federal courts sitting in Texas need only consider the second step of the analysis.[3]

The Fourteenth Amendment's Due Process Clause permits a federal court to exercise personal jurisdiction over a nonresident defendant if that defendant had "certain minimum

---

[1] Plaintiff is suing individually and as a representative of Decedent's estate.

[2] *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).

[3] *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[4]

The plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident defendant.[5] But when a court rules on the issue without a full evidentiary hearing, a plaintiff need only make a prima facie showing.[6] And if the plaintiff does so, the burden shifts to the nonresident defendant to prove that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.[7]

## II.   Improper venue under Rule 12(b)(3).

Under Rule 12(b)(3), a party may move to dismiss or transfer a claim for improper venue.  "The Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion," but "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum."[8] If there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts that, taken as true, would establish venue.[9] The court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.[10] Further, in deciding whether venue is proper, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments."[11]

---

[4] *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 235 (5th Cir. 2022) (holding that the due process analysis for personal jurisdiction is the same under the Fifth and Fourteenth Amendment).
[5] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).
[6] *Id.*
[7] *Id.*
[8] *Galderma Labs., LP v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017); *see also Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 (W.D. Tex. 2016).
[9] *Langton v. Cheyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).
[10] *Id.*; *see also Braspetro Oil Servs., Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (unpublished).
[11] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

### III.    Failure to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[12] "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[13] In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14]

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16] A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] A court may also consider documents that a defendant attaches to a motion to

---

[12] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[13] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[15] *Id.*

[16] *Id.*

[17] *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."[18] But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.[19] "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'"[20]

DISCUSSION

## I.   Does this Court have personal jurisdiction over Defendant?

The Court starts with Defendant's personal jurisdiction argument. Personal jurisdiction comes in two types: general and specific. General jurisdiction is not in dispute; the issues here revolve around specific jurisdiction.[21] Under the Fifth Circuit's three-step inquiry, a court may exercise specific jurisdiction over a nonresident defendant when:

(1) the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there";

(2) "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts"; and

(3) exercising personal jurisdiction over the defendant "is fair and reasonable."[22]

### A.  Has Plaintiff made a prima facie showing that Defendant's direct activities established minimum contacts with Texas?

This case is a products liability case—a case in which "a nonresident defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately causes

---

[18] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

[19] *Dorsey,* 540 F.3d at 338.

[20] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

[21] Plaintiff's Amended Complaint jurisdiction allegations state only that "[t]he Court has *specific personal jurisdiction* over [Defendant]." Doc. 3 at 2 (emphasis added).

[22] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (using these three factors to establish whether a defendant had the constitutionally required "minimum contacts" with the forum state).

5

harm *inside* the forum."[23] And in such cases, the Fifth Circuit has consistently followed the "stream-of-commerce" approach to personal jurisdiction issues.[24] Put simply, under the "stream-of-commerce" approach, a nonresident defendant will have "minimum contacts" with the forum if "the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'"[25] Although the nonresident defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce."[26]

Neither Party's briefing, however, mentions the "stream-of-commerce" approach, which is strange given how easy it is to see that Defendant established minimum contacts with Texas under this approach. For instance, Plaintiff's Amended Complaint states that Decedent "purchased kratom from [Defendant's] online store on a monthly basis" for around 12 years.[27] And Defendant shipped these purchases to a Texas address, even though it could have blacklisted shipping to Texas like it did other states.[28]

So at the very least, Defendant knowingly delivered its products into Texas. Or better yet, Defendant "derive[d] financial benefit from sales in the forum," which is "the quid pro

---

[23] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) (emphasis in original).
[24] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013).
[25] *Id.* (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)).
[26] *Id.*
[27] Doc. 3 at 3.
[28] *Id.*; Doc. 7 at 9. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126–27 (W.D. Pa. 1997).

quo for requiring the defendant to suffer a suit in the foreign forum."[29] These acts are also not "random, fortuitous, or attenuated, or of the unilateral activity of another party" because, as the Fifth Circuit has held, "a sale made or fulfilled by the defendant directly to a plaintiff that the defendant knows is located in the forum-state is not unilateral activity in the strictest sense of the term, as it necessarily requires the defendants' willing participation in the transaction."[30] Thus, Defendant cannot now "feign surprise" that it had minimum contacts with a state it sold and delivered its products to.[31]

### B. Has Plaintiff made a prima facie case that her causes of action arise out of or result from Defendant's Texas-related contacts?

The next question is whether Plaintiff's claims "arise out of or relate to" Defendant's contacts with Texas. Under the stream-of-commerce approach, that's simple, because "[a]t day's end, the relatedness prong is met when the claims pleaded "arise out of the product."[32] And that's the case here.

Plaintiff's Amended Complaint alleges four claims: (1) negligence, (2) negligent misrepresentation, (3) breach of implied warranty, and (4) product defects.[33] The common denominator for all four claims is that Defendant's Product allegedly caused Decedent's death. Thus, the relatedness prong is met.

---

[29] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 373 (5th Cir. 2010); *see also Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (extending personal jurisdiction where defendant's invoices indicated forum state as the destination and concluding that businesses cannot claim ignorance of contents of their own orders); *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 591 (5th Cir. 2014) ("Here, TG directly contracted to sell a significant amount of drywall to a forum resident through multiple sales, and personally designed its product in a way that identified it with the forum resident. TG purposefully availed itself of Virginia. The first prong is therefore met.").

[30] *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, *4 (5th Cir. Mar. 30, 2022) (per curiam).

[31] *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 376 (N.D. Tex. 2010).

[32] *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, *14 (E.D. Tex. July 6, 2021) (quoting *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009).

[33] Doc. 3 at 12–13.

### C. Has Defendant shown that exercising personal jurisdiction over it would not be fair and reasonable?

Because Plaintiff's Amended Complaint makes a prima facie case that her claims are related to Defendant's contacts with Texas, the burden shifts to Defendant to prove that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.[34]

Put simply, the pertinent question is whether it is unreasonable "to require [a] corporation to defend" itself in a specific forum.[35] Courts determine "the inconveniences which would result to the corporation from a trial away from its home or principal place of business" by balancing five factors:[36]

> (1) the burden on the nonresident defendant,
>
> (2) the forum state's interests,
>
> (3) the plaintiff's interest in securing relief,
>
> (4) the interest of the interstate judicial system in the efficient administration of justice, and
>
> (5) the shared interest of the several states in furthering fundamental social policies.[37]

Defendant's main argument is that forcing it to defend itself in a state where it has no physical presence would create a "significant burden" because Defendant would need to transport witnesses and documents from Nevada to Texas.[38] A defendant's burden is a "primary concern," but when, as here, a defendant sold and delivered products into the

---

[34] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

[35] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945) (citation and quotation marks omitted).

[36] *Id.*

[37] *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020) (citation omitted).

[38] Doc. 6 at 11.

forum, the defendant's "burden" argument must be "compelling."[39] And on balance, that argument is not compelling.

Yet even if the Court believed the first factor tilted in Defendant's favor, all four remaining factors would fall in Plaintiff's favor because Defendant chose to not address them.[40] Defendant does argue that "nothing in the Complaint invokes any particular policy considerations overcoming the other factors."[41] But that misunderstands this prong; it's now Defendant's burden to show how exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.[42] Simply stating that the burden should fall back on Plaintiff's shoulders is insufficient. As a result, it does not offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Defendant, and thus Defendant's motion to dismiss under Rule 12(b)(2) should be denied.

## II.    Is this venue proper?

Because the Court has personal jurisdiction over Defendant, the Court next moves to Defendant's motion to transfer venue 28 U.S.C. § 1404(a).[43]

Section 1404(a) is a change of venue statute, which allows a district court to "transfer any civil action" if the movant establishes two things. First, the venue to which that party

---

[39] *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[40] Defendant does argue that Plaintiff forfeited her interest in relief through "forum shopping" when Plaintiff originally filed in state court in Harris County, Texas. But as Plaintiff points in her response, the suit was originally filed there because of a mistake in identifying the correct entity to sue. Once that mistake was discovered, the suit in Harris County was voluntarily dismissed.

[41] Doc. 6 at 12.

[42] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

[43] The Court analyzes Defendant's transfer motion because, if transfer to another court is necessary, the recipient court should be the one to analyze Defendant's 12(b)(6) motion.

seeks transfer must be a district or division "where the claims could have been originally filed."[44] If that burden is met, the movant must then "clearly demonstrate" that a transfer is 'for the convenience of parties and witnesses, in the interest of justice.'"[45] So logically, the threshold question is whether this suit could have been brought in the District of Nevada.[46]

That threshold is easily surpassed. If Plaintiff's claims were filed in the District of Nevada, there would still be diversity jurisdiction, with venue supported by Defendant's status as a Nevada limited liability company.[47] Thus, this suit "could have been filed" in the District of Nevada.[48]

That said, Defendant must still "clearly demonstrate" "good cause" for the transfer[49] Courts determine "good cause" by using four private-interest factors and four public-interest factors to measure the "convenience of parties and witnesses" and "the interest of justice" between the proposed venue and the present one.

| Private-Interest Factors | Public-Interest Factors |
|---|---|
| (1) the relative ease of access to sources of proof | (1) the administrative difficulties flowing from court congestion |
| (2) the availability of compulsory process to secure witnesses' attendance | (2) the local interest in having local issues decided at home |
| (3) the willing witnesses' cost of attendance | (3) the forum's familiarity with the governing law |
| (4) all other practical problems that make the case's trial easy, expeditious, and | (4) the avoidance of unnecessary conflict-of-law problems involving the application |

---

[44] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) [hereinafter *Volkswagen I*] (citing § 1404(a)).
[45] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*] (quoting § 1404(a)).
[46] *Volkswagen I*, 371 F.3d at 203.
[47] 28 U.S.C. § 1391(a)(1).
[48] *Volkswagen I*, 371 F.3d at 203.
[49] *Volkswagen II*, 545 F.3d at 315 (cleaned up).

| inexpensive | of foreign law |
|---|---|

These factors, however, "are not necessarily exhaustive or exclusive" and none are dispositive.[50] Indeed, courts should consider the factors using an "individualized, case-by-case analysis."[51] Yet again, "[i]t is the movant's burden—and the movant's alone—to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."[52]

### A. Private-interest factors.

#### i.   *Factor (1): access to sources of proof.*

The first private-interest factor "focuses on the location of documents and physical evidence relating to the case."[53] Here, Defendant argues that the "logical location of books and records in this case is Nevada."[54] But Defendant never specifies what those books and records are, and the "failure to identify with specificity as to the documents … is a failure of the moving party to meet its burden on transfer."[55] What's more, Defendant ignores the obvious physical evidence in this case. For example, Decedent's death occurred in Midland, and the product that allegedly caused it appears to still be present in this venue.[56] That's probably relevant physical evidence. And "[t]he location of evidence bears much more

---

[50] *Id.*

[51] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

[52] *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

[53] *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)  (cleaned up).

[54] Doc. 6 at 20.

[55] *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-00186-JRG, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

[56] *See Volkswagen II*, 545 F.3d at 316 (focusing on access to sources of proof at the collision site—the location of the injury).

strongly on the transfer analysis when . . . the evidence is physical in nature."[57] So in short, this factor weighs against transfer.

> ii. *Factors (2) and (3): compulsory process for non-party witnesses and the cost of attendance for willing witnesses.*

The second and third private-interest factors highlight the differences between willing and unwilling witnesses in a particular case. Generally, under Rule 45 of the Federal Rules of Civil Procedure, a court may compel a person to attend a trial, hearing, or deposition through a subpoena if that person "resides, is employed, or regularly transacts business" within 100 miles of that court.[58] Here, Defendant's motion states that its witnesses "all reside in Nevada" and that "the cost of witness attendance … in this District would be high."[59]

Such ill-defined statements, however, miss the mark in two critical ways. First, Defendant does not delineate whether its "witnesses" are employees or third parties. The difference between the two matters. For example, employees are considered "willing witnesses" because they are "'presumed to appear willingly on behalf of their party employer.'"[60] Thus, Defendant's employees "'should be considered *party witnesses*.'"[61]

Yet the compulsory process factor "considers only *non-party witnesses*."[62] In fact, this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify."[63] So when Defendant fails to differentiate between party and non-party

---

[57] *In re Planned Parenthood*, 52 F.4th at 630.
[58] FED. R. CIV. P. 45(c)(1)(A)–(B).
[59] Doc. 6 at 19.
[60] *Coleman v. Trican Well Serv., L.P.*, 89 F. Supp. 3d 876, 884 (W.D. Tex. 2015) (quoting V*argas v. Seamar Divers Intern., LLC*, No. 2:10–CV–178–TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011)).
[61] *Id.* (quoting V*argas*, 2011 WL 1980001, at *5) (emphasis added).
[62] V*argas*, 2011 WL 1980001, at *5 (emphasis added).
[63] *In re Planned Parenthood*, 52 F.4th at 630–31 (internal quotations removed).

witnesses (willing and unwilling), it fails to identify what witnesses are unwilling, thus hamstringing its own argument.

The same could also be said for Defendant's argument that "the cost of witness attendance … in this District would be high."[64] The Court doesn't doubt that the cost of attendance would be higher in Midland rather than a venue located in Nevada for Defendant's Nevada employees. Indeed, even if they were willing witnesses in this venue, Defendant's employees would be required "to travel thousands of extra miles, incurring substantial additional travel time, meal and lodging expenses, time away from their regular employment, and personal costs associated with being away from work, family, and community."[65]

But by merely positing that some unidentified "witnesses" will incur some undefined "high costs," Defendant leaves the Court with mere general allegations.[66] And "[t]he Court cannot properly weigh the relevance and materiality of information known by witnesses who have yet to be identified."[67] So with Defendant's motion lacking critical details, the Court cannot find these two factors support transfer.

---

[64] Doc. 6 at 19.

[65] *In re TikTok, Inc.*, 85 F.4th at 362.

[66] *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied"); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, § 3851 Standard in Considering Transfer—Convenience and Location of Witnesses, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied.").

[67] *Freedom Pats. LLC v. DISH Network Corp.*, No. 4:23-CV-00303, 2024 WL 1147828, at *5 (E.D. Tex. Mar. 15, 2024)

### iii. Factor (4): all other practical problems.

Lastly, it's unclear whether Defendant's motion addresses the final private-interest factor. Accordingly, with the burden being Defendant's, this factor would be neutral.

### B. Public-interest factors.

With all four private-interest factors failing to support transfer, it seems unlikely that the public-interest factors will make up the difference. The Court foresees no administrative difficulties based on congestion of its docket. Nor does the Court see a "local interest" in Nevada so great that transfer would be necessary. Likewise, Defendant's position that Texas law might not apply is unavailing for two reasons. First, although Defendant states that "Plaintiffs have not even established that Texas law applies to this dispute," the burden in showing these factors support transfer still falls on Defendant's shoulders.[68] Second, "[t]he party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict."[69] Defendant does not do so.[70] In fact, Defendant applies Texas law to seek dismissal of Plaintiff's claims.

In sum, Defendant has not met its burden "to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."[71] As a result, Defendant's motion to transfer venue should be denied.

---

[68] Doc. 6 at 20.

[69] *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 841 (N.D. Tex. 2012) (citing *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

[70] Defendant's motion to dismiss under Rule 12(b)(6) makes not mention of a conflict of laws, using only Texas law to seek dismissal of Plaintiff's claims.

[71] *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

### III.    Has Plaintiff stated a plausible claim for relief?

Defendant lastly moves to dismiss each of Plaintiff's claims, which the Court will handle in turn. But first, even though the Court doesn't take it as a serious argument, the Court will address Defendant's arguments that Plaintiff's claims are preempted.

The case Defendant cites for this argument is an unpublished Fifth Circuit case where a prisoner brought a products liability case against Pfizer, claiming that Federal Food, Drug, and Cosmetic Act ("FDCA") provided him with a private right of action.[72] Defendant now uses this case to argue Plaintiff "has no standing to assert claims under the FDCA."[73] This might be relevant had Plaintiff assertted claims under the FDCA. Plaintiff alleges only negligence, negligent misrepresentation, breach of implied warranty, and product defect claims.[74]

Likewise, Defendant believes that a recent addition to the Texas Health & Safety Code makes it so that only the attorney general or the district or county attorney may sue for injuries caused by kratom.[75] In fact, Defendant says this statute provides "the exclusive remedy" for claims involving kratom. Defendant fails to provide anything to support this assertion?

So with those "arguments" handled, the Court starts with Plaintiff's negligence claim.

### A.  Plaintiff's negligence claim.

A common law negligence claim has three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the

---

[72] *Scott v. Pfizer Inc.*, 182 Fed. Appx. 312, 315 (5th Cir. 2006) (unpublished) (per curiam).
[73] Doc. 6 at 18.
[74] Doc. 3 at 12–13.
[75] Doc. 6 at 18 (citing Tex. Health & Safety Code Ann. § 444.005(d)).

breach.[76] The "existence, scope, and elements of a duty" is the threshold question of law for a negligence claim.[77] Whether Defendant owed Decedent a duty is the first of Defendant's three main attacks.

Defendant's first contention is that Plaintiff has not adequately pleaded that Defendant owed Decedent any statutory, contractual, or common-law duty.[78] But that's difficult to believe when comparing Plaintiff's allegations to Texas law. Under Texas law, product manufacturers, which Defendant is alleged to be, have various duties. For example, manufacturers have a duty in negligence actions to "provide a product that is reasonably safe for its foreseeable use."[79] Plaintiff's Amended Complaint alleges Defendant "had a duty to provide [Decedent], a foreseeable user, a safe product free of inherent dangers."[80] So Plaintiff clearly pleaded a manufacturer's duty under Texas law.

Defendant's next argument is that its alleged failure to warn Decedent about the risks or adequately instruct him on the proper use of Defendant's Product is "directly refuted by the Complaint" because the photographs found in the Amended Complaint show various warnings and instructions on the packaging of Defendant's product.[81] Yet unlike the existence of duty in the negligence context, breach of that duty is a question of fact.[82] Here, the alleged facts—that Defendant's "warnings" were "inadequate"—are very much

---

[76] *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022).

[77] *Id.*

[78] Doc. 6 at 13.

[79] *Walker v. Koelzer*, No. 3:21-CV-1845-B, 2024 WL 420793, *3 (N.D. Tex. Feb. 5, 2024) (quoting *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 584 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.)).

[80] Doc. 3 at 12.

[81] Doc. 6 at 13–14.

[82] *See, e.g.*, *Cruz v. Mor-Con, Inc.*, 672 S.W.3d 175, 181 (Tex. App.—Tyler 2023, no pet.).

disputed.[83] And "[a] motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[84] Thus, dismissal is unwarranted based on this argument.

Defendant's last argument is that Plaintiff's "marketing" and "advertising" breaches are conclusory and implausible.[85] Defendant cites no legal support for that position, but even then, Defendant is half right. For the half Defendant gets wrong, Plaintiff's "marketing" allegations are in the same vein as her failure to warn claims. Indeed, the Texas Supreme Court has reasoned that "failure to warn" is simply "a type of marketing defect."[86] So for the same reasons the Court outlined above, dismissal of any "marketing defect" allegations at this early stage in the litigation is unwarranted.[87]

The half Defendant gets right, however, is on Plaintiff's "advertising" allegations. For instance, Plaintiff's Amended Complaint asserts that Defendant "routinely" sent Decedent advertisements portraying kratom as safe for human consumption.[88] Yet these allegations read as "false advertising" claims. And "Texas does not appear to recognize a common law claim for false advertising."[89] Although there are legal avenues for false advertising allegations, the way they are pleaded by Plaintiff—under a common-law negligence claim—is not one of them. Therefore, any "false advertising allegations" should be dismissed.

---

[83] *See, e.g.*, *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 179 (Tex. 2004) (citing definition from *Texas Pattern Jury Charge* that warnings and instructions must be "adequate.").

[84] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

[85] Doc. 6 at 14.

[86] *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).

[87] The Court does note that this "marketing" allegations mirror Plaintiff's strict liability marketing defect claim discussed below.

[88] Doc. 3 at 6.

[89] *SSCP Mgmt. Inc. v. Sutherland/Palumbo, LLC*, No. 02-19-00254-CV, 2020 WL 7640150 (Tex. App.—Fort Worth Dec. 23, 2020, pet. denied) (mem. op.) (citing *Kodiak Products Co., Inc. v. Deegear*, No. 02-13-00422-CV, 2015 WL 3523195, at *8 (Tex. App.—Fort Worth June 4, 2015) (mem. op.), *judgment withdrawn*, No. 02-13-00422-CV, 2015 WL 5104694 (Tex. App.—Fort Worth Aug. 28, 2015, no pet.) (mem. op.)).

**B. Plaintiff's negligent misrepresentation claim.**

At the start, the Court notes that Plaintiff's negligent misrepresentation claim contains a fatal flaw. Indeed, the key point both Parties overlook here is that the Texas Supreme Court has never recognized a negligent misrepresentation claim for *physical injuries*.

Take the Restatement (Second) of Torts, which lays out two categories of negligent misrepresentation. The first category is found in § 552B, where "a plaintiff must show that the defendant negligently supplied false information in the course of his business, that his intent was to influence the plaintiff's business decisions, and that the advice caused monetary loss."[90] The second is found under § 311, where "plaintiff may bring a claim for negligent misrepresentation when a defendant negligently offers false information that results in the plaintiff's *physical harm*."[91]

Here, the alleged injury is physical, which would be covered by § 311.[92] But the Texas Supreme Court has only adopted § 552B for negligent misrepresentation claims.[93] Indeed, various Texas courts have noted that "Texas has not adopted Section 311 of the Restatement or otherwise created a tort for negligent misrepresentation leading to physical harm, rather than pecuniary loss."[94] At best, a plaintiff's "ability to bring a negligent

---

[90] *Butler v. Juno Therapeutics, Inc.*, No. CV H-18-898, 2019 WL 2568477, *24 (S.D. Tex. June 21, 2019).(citing RESTATEMENT (SECOND) OF TORTS § 552B (1977)).

[91] *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 311 (1977) (emphasis added).

[92] Doc. 1-9 at 5 ("As a result of Defendants' conduct, Plaintiff Jeff Springman sustained physical injuries which are terminal").

[93] *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting § 552B).

[94] *See, e.g.*, *Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309 RP, 2015 WL 7454688, *5 (W.D. Tex. Nov. 23, 2015); *see also Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 295 (Tex. 1996) (Enoch, J., concurring in part and dissenting in part) ("Even more striking is that this Court has refused to recognize the tort of negligent misrepresentation for a non-pecuniary injury. In Texas, the only cause of action for negligent

misrepresentation claim in a personal injury action is unclear under Texas law."[95] And "unclear" is not enough to persuade this Court to recognize what the Texas Supreme Court has not. As a result, Plaintiff's negligent misrepresentation claim should be dismissed.

### C. Plaintiff's breach of implied warranty claim.

Plaintiff did not address any of Defendant's dismissal arguments on the breach of implied warranty claim. A plaintiff's failure to defend a claim in response to a motion to dismiss constitutes abandonment.[96] Which means Defendant's motion on this claim should be granted.

### D. Plaintiff's product defect claim.

Plaintiff's final cause of action is a strict liability product defect claim. The elements of such a claim are "(1) a defective product that (2) was unreasonably dangerous, (3) did not substantially change from its original condition when it reached the consumer, and (4) caused the plaintiff's injuries."[97] For the first element, a defective product can be one with either a marketing, design, or manufacturing defect.[98] Here, Plaintiff's alleges the Product was defective in all three ways.[99]

In short, the Court agrees with Defendant's arguments that Plaintiff failed to plead all requisite elements for her manufacturing and design defect claims.[100] Indeed, dismissal

---

misrepresentation that exists is if … the plaintiff suffers pecuniary loss by justifiably relying on the representation.").

[95] *Butler v. Juno Therapeutics, Inc.*, No. CV H-18-898, 2019 WL 2568477, *24 (S.D. Tex. June 21, 2019).

[96] *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss).

[97] *Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711, *2 (5th Cir. Dec. 6, 2022) (unpublished) (per curiam).

[98] *Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711 (5th Cir. Dec. 6, 2022) (unpublished) (per curiam) (quoting *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006)).

[99] Doc. 3 at 13.

[100] Docs. 6 at 17–18, 8 at 8.

should be granted on those grounds alone. But besides those points, the Court notes how tacking on manufacturing and design defect claims makes little sense here.

For example, for her manufacturing defect claim, Plaintiff must plead that the Product "deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous."[101] Yet Plaintiff does not allege that, likely because doing so contradicts her other allegations. Indeed, a manufacturing defect claim implies there's a safe way to manufacture the product, but some mistake in the manufacturing process caused a dangerous defect. So here, an adequately pleaded manufacturing defect claim would be that bags of Defendant's kratom powder can be safely consumed, but the bag of "Red Vein Thai Kratom" sold to Decedent had a manufacturing mistake that rendered it unreasonably dangerous.

Yet according to Plaintiff's Amended Complaint, kratom itself is "toxic" and "unfit for human consumption."[102] So which is it? Is kratom so inherently dangerous that it's impossible for a manufacturer to make a reasonably safe product containing it? That's Plaintiff's negligence claim. Or can a kratom-based product generally be manufactured for "safe" consumption, but the Product here deviated from that manufacturing plan? That would be a manufacturing defect claim. It thus appears difficult to have it both ways based on the allegations.

The same logic applies to Plaintiff's design defect claim. Plaintiff needed to plead— but failed to do so—that a safer alternative design existed.[103] In this context, the Product's

---

[101] *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).
[102] Doc. 3 at 5, 10.
[103] *Harrison*, 2022 WL 17443711, *3.

"design" would be its ingredients, which is just kratom.[104] Yet again, if, as Plaintiff puts it, kratom is "unfit for human consumption," there are no "safer alternative" kratom-based products because they all would still contain something allegedly not fit for human consumption.[105].

Plaintiff's only plausible strict liability claim is under a marketing defect theory, which mirrors Plaintiff's negligent failure to warn claim.[106] But although these two claims are similar, the Texas Supreme Court has reasoned these "theories are not identical."[107] Indeed, "[p]roducts liability focuses on the product; negligence focuses on the supplier's conduct."[108] That said, both theories still require that the manufacturer first have had a duty to provide a warning under the circumstances.[109]

For marketing defect claims, a manufacturer has a "duty to warn if it knows or should know of the potential harm to a user because of the nature of its product."[110] Simply alleging that Defendant knew or should have known its product could cause harm would appear to be a simple hurdle to clear. But Plaintiff appears to have stumbled; the Court does not see

---

[104] *See, e.g.*, *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 432–33 (Tex. 1997) (analyzing the "design" of cigarettes).

[105] Doc. 3 at 5.

[106] The Court notes there are potential issue with having strict liability and negligence theories in the same case because there could be overlapping elements of proof. For example, if the question of fact for both Plaintiff's negligence and marketing defect claims is whether the warnings were "adequate," both claims should not go to the jury. Indeed, the Texas Supreme Court has reasoned that "a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665–66 (Tex. 1999) (affirming refusal in crashworthiness case to submit question on breach of implied warranty in addition to strict products liability question); s*ee also Hanus v. Texas Utilities Co.*, 71 S.W.3d 874, 881 (Tex. App.—Fort Worth 2002, no pet.) ("Commentators and other courts have also recognized that the duty-to-warn analyses of marketing defect and negligence claims are so similar as to be duplicative.").

[107] *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 181 (Tex. 2004).

[108] *Id.*

[109] *Hanus v. Tex. Utilities Co.*, 71 S.W.3d 874 (Tex. App.—Fort Worth 2002, no pet.)

[110] *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).

where Plaintiff alleges this duty in her Amended Complaint. And without an alleged duty, this claim must fail. As a result, this claim should also be dismissed.

## IV.   Plaintiff should not be given leave to amend her because she did "expressly request" it.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice.[111] The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.[112] But there's a problem—Plaintiff did not request leave to amend.

Because Plaintiff has already amended her pleadings once as a matter of course, requesting leave to amend is now required.[113] The lengthy title of Plaintiff's responsive briefing does end with the description "Alternate Motion for Leave to Amend."[114] Yet past that title "leave to amend" is never mentioned again. So although it's true that a "formal motion is not always required" when requesting leave to amend, the requesting party must "set forth with particularity the grounds for the amendment and the relief sought."[115] Indeed, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."[116] And a "bare request" is all Plaintiff provided.[117] As a result, Plaintiff should not be given leave to amend.

---

[111] *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 685–86 (S.D. Tex. 2013).
[112] *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).
[113] *Compare* Doc. 1 *with* Doc. 3; Fed. R. Civ. P. 15(a)(2).
[114] Doc. 7 at 1.
[115] *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).
[116] *Id.*

CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss be **GRANTED** in part and **DENIED** in part. (Doc. 6).

It is also **ORDERED** that Plaintiff's negligent misrepresentation, breach of implied warranty, and product defect claims be **DISMISSED** with prejudice.

It is so **ORDERED**.

SIGNED this 5th day of May, 2024.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[117] *See Partners & Friends Holding Corp. v. Cottonwood Minerals, L.L.C.*, No. 23-10192, 2023 WL 8649880, *4 (5th Cir. Dec. 14, 2023) (unpublished) (per curiam) (finding the district court did not abuse its discretion because the plaintiff's request for leave to amend—"should the Court desire to grant the Motion, Plaintiff alternatively requests that it be given an opportunity to amend its complaint before dismissal"—was a "bare request" not contemplated by Rule 15(a)).